IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JACK TRAVIS,

                Plaintiff,                      OPINION AND ORDER

v.                                       09-cv-0077-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Jack A. Travis seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Supplemental Security Income under Title XVI of the Social Security Act, codified at 42 U.S.C. § 1382(c)(3)(A).  Travis, who was 40 years old at the time he applied for supplemental security income, is a former heroin addict who suffered third degree burns over 60 percent of his body in a 1986 car accident.  He alleges that he cannot work because of chronic pain from his burns and skin grafts and from symptoms of depression and post-traumatic stress disorder.  The administrative law judge denied plaintiff's application at the administrative level after determining that in spite of his physical and mental impairments,

1

plaintiff was able to perform jobs at the sedentary and light levels of exertion that were simple and repetitive and required only minimal contact with the public, coworkers and supervisors. Answering a hypothetical question that adopted these restrictions, a vocational expert testified that such an individual would be able to perform thousands of jobs in Wisconsin, including the jobs of assembler, packager and inspector.

Plaintiff raises a number of challenges to the administrative law judge's decision, but only one is persuasive. I agree that the administrative law judge did not explain adequately how he accounted in his residual functional capacity and corresponding hypothetical for all of the mental limitations found by Linda Ingison, Ph. D., who performed a consultative examination of plaintiff in 2003 and whose opinion the administrative law judge found was entitled to significant weight. Accordingly, I am remanding this case for further proceedings on that ground. In all other respects, the commissioner's decision is affirmed.

The following facts are drawn from the administrative record (AR):

FACTS

A. Background and Procedural History

Plaintiff was born on April 1, 1963. He has a high school education. AR 35. Plaintiff had past relevant work as a painter. AR 34.

Plaintiff applied for Supplemental Security Income on April 2, 2004, alleging disability because of third degree burns covering 60 percent of his body, Hepatitis C, liver problems, poor circulation and post-traumatic stress disorder.  AR 120-22, 191.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on April 10, 2007 before Administrative Law Judge Robert L. Bartelt, Jr.  The administrative law judge heard testimony from plaintiff, a neutral medical expert and a neutral vocational expert.  AR 508-549.  On May 25, 2007, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 26-36.  The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on August 12, 2008.  AR 5-7.

## B.  Medical Evidence

### 1.  Background

In 1986, plaintiff was involved in a motor vehicle accident in which he suffered third degree burns to 60 percent of his body, requiring multiple skin grafts.  He has a history of intravenous drug abuse and cocaine use.  AR 347.  From 1998 through 2000, plaintiff received methadone treatment.  AR 308-22, 333-34.  In September 2002, after relapsing, plaintiff began another methadone treatment program. AR 207, 328-33.  In August 2003, plaintiff was readmitted to a methadone program but stayed in the program only until

3

October 2003, AR 324-27, when he was terminated because of his alcohol use.  Around that time, plaintiff's treating physician noted that plaintiff had begun a new full time job supervising a paint crew.  AR 300.

In January 2004, plaintiff sought readmission to the methadone program.  He was denied readmission because he had not sought treatment for his drinking.  AR 324.

2. <u>Dr. Ingison</u>

On March 12, 2003, psychologist Dr. Linda Ingison performed a consultative examination of plaintiff for the state disability agency in connection with an earlier application by plaintiff for Supplemental Security Income.  Plaintiff reported that he took Remeron, Lexapro and methadone for anxiety, depression and chronic pain.  He stated that the methadone helped him because of his past opioid dependence.  He reported living in a room in his mother's basement and not having left his home in the previous six months. Plaintiff reported significant anxiety symptoms upon leaving his house, stating that he thought people were watching him and making fun of him.  Since the 1986 car accident, plaintiff said, his mood was consistently low and he had nightmares and flashbacks of being burned.  Plaintiff reported that he had been drug free for years but still consumed alcohol on occasion.  He typically stayed in his room all day, watching television.  He did no shopping or other chores, and needed reminders to shower.  AR 274-75.  Plaintiff's brother-

in-law, who accompanied him to the visit, corroborated plaintiff's report, stating that plaintiff was quite withdrawn and socially avoidant.

On examination, Ingison noted that plaintiff had a somewhat unkempt appearance and heavy odor of smoke.  Plaintiff appeared anxious, worried and sad and did not appear to be malingering or exaggerating.  She noted that "memory appears to be a problem" for plaintiff, noting that he displayed some difficulties on memory testing.   Plaintiff's concentration was impaired as well, although Ingison noted that plaintiff was able to follow a simple, three-step command.   AR 275.   Ingison concluded that plaintiff had alcohol abuse/dependence, in partial remission; opioid dependence, in full remission on methadone; social anxiety disorder; post-traumatic stress disorder; adjustment disorder with superimposed major depressive episode; panic disorder and agoraphobia.  AR 277-78.  She noted that plaintiff had made some effort at treatment with variable success and displayed rather low motivation to get better.  Assessing plaintiff's work capacity, Ingison wrote:

> The claimant was generally able to understand, remember, and carry out the instructions typical in this evaluation today.   However, he needed to be reinstructed on one or two occasions.  He was able to respond appropriately to this evaluator, although was clearly anxious and seemed as if he would like to leave the appointment as early as possible.  He states that he has generally avoided others and had some difficulties in the work place.  Concentration and attention were in the adequate to low-adequate range.  His difficulties would be probably high in areas of stress, change, and pacing demands.  His mother serves as de facto payee at this time, and he readily admits that he is poor with money and will spend it on things that are unnecessary. Given his intermittent use of alcohol, it seems likely that for these reasons a payee would be appropriate for this man.

5

AR 278.

3.  Dr. Nakada

On January 20, 2004, plaintiff was seen by Dr. Deanna Nakada, a specialist in gastroenterology and hepatology, at the University of Wisconsin Hospital Hepatology Clinic to discuss his hepatitis C virus and options for treatment.  AR 346.  Plaintiff reported that he had been out of prison for two years.  He said he had last used drugs intravenously a year before the visit but had used heroin intramuscularly one week before the visit.  He reported that he had had a female partner for the last year.  AR 347.  On examination, Nakada found plaintiff's liver to be enlarged.  Nakada found plaintiff ineligible for the treatment program because he was actively using heroin intramuscularly.

On February 12, 2004, plaintiff returned to see Nakada to review the results of a recent abdominal computerized tomography scan.  Nakada informed plaintiff that the results were essentially normal.  AR 344.  Nakada told plaintiff that he could start treatment in June 2004 if he quit using heroin.  She also advised him of options for obtaining financial assistance.  AR 345.

Plaintiff returned to see Nakada in June 2004, reporting that he was having significant right upper quadrant pain and generally felt terrible.  He was not getting sleep and was having significant myalgias and arthralgias.  Plaintiff reported that he had not used

6

heroin since February and had not had alcohol in some time.  Nakada found plaintiff eligible for treatment because he had been drug-free for six months, but she noted that he did not have the financial means to begin the treatment.  AR 338.  Plaintiff told Nakada that he was working on getting social security, a medical assistance card, disability and enrollment in a free medication program.  He was on a one-year waiting list to see a psychiatrist.  AR 338-39.

### 4. Dr. Lozeau

In March 2004, plaintiff began seeing Dr. Anne Marie Lozeau, a physician in family practice, for his depression and chronic pain related to his hepatitis C and burn injuries.  He was taking Seroquel, Zoloft and morphine sulfate.  AR 427.  On March 30, 2004, Lozeau refilled his narcotics prescription through the end of May.  AR 425.

Plaintiff returned to see Lozeau on May 28, 2004.  She refilled his morphine through July 9, 2004, but declined his request to increase his dosage.  Plaintiff refused refills for Seroquel and Zoloft, stating that he could not afford them.  Lozeau told plaintiff that the cost of the Seroquel would be the same as the cost of the increased morphine dosage.  She told him she would give him the Seroquel but he refused and stated he would wait for the medical assistance program to pay for it.  AR 423-24.

Plaintiff saw Lozeau on July 2, 2004. Plaintiff said he felt he might need more morphine, noting that he took up to five a day occasionally. Plaintiff said his depression was controlled relatively well on Zoloft, although he was not taking his Seroquel and as a result was having more nightmares. Lozeau wrote that she was not sure why plaintiff was not taking the Seroquel, after she had been able to get it approved through the free assistance program. She refilled his morphine prescription but did not increase the dosage, instead referring plaintiff to Dr. Richard Brown for a second opinion. AR 421-22.

Plaintiff saw Dr. Brown on August 16, 2004. Plaintiff told him that he had not used heroin for years or alcohol for the past eight months. He said he had problems with chronic pain and sleep and did not function well. He said Zoloft and Seroquel were somewhat helpful for his symptoms of post-traumatic stress disorder, although he said he had not been able to get Seroquel lately because of the cost. He tried to get out of the house once a day and had a girlfriend who visited him once or twice a week. Brown concluded that plaintiff had chronic pain, post-traumatic stress disorder and sleep difficulties, and that it would be reasonable to increase plaintiff's morphine dosage. AR 419-20.

The next day plaintiff saw Dr. Lozeau. She noted that plaintiff seemed calm and relaxed and smiled during the visit. She agreed with Brown's recommendation and increased plaintiff's morphine dosage. AR 417-18. On October 26, 2004, Lozeau noted that plaintiff had missed an appointment, but that a drug screen came back negative. She noted that

plaintiff had been doing well overall and was happy with the current medication regimen. She noted that for the first time he did not request additional medication. AR 415. On December 13, 2004, Lozeau noted that plaintiff was doing well on his current regimen of extended release morphine. AR 413-14. On February 2, 2005, Lozeau indicated that plaintiff was continuing to do well. AR 497.

On May 23, 2005, plaintiff saw Lozeau and reported that he had been doing quite well. Lozeau noted that plaintiff had been able to get his psychiatric medications through the drug assistance program and that both his post-traumatic stress disorder and his chronic pain were under good control on his medication regimen. Lozeau observed that plaintiff was relaxed and was appropriate in dress, appearance and affect. AR 490.

On September 19, 2005, Dr. Lozeau wrote a letter in support of plaintiff's application for social security, stating that, since she had known him, plaintiff had been unable to work because of his chronic pain resulting from his burns as well as his depression and post-traumatic stress disorder. She thought he would have difficulty with lifting, carrying and prolonged sitting and standing. In addition, she said, plaintiff might have difficulty carrying out instructions and would have difficulty handling normal work pressures because of his post-traumatic stress syndrome. AR 449.

In October 2005, Dr. Lozeau prescribed Valium to replace the Seroquel that plaintiff had stopped taking because of adverse side effects.  AR 483.  In December 2005, she noted that the Valium was working well to reduce plaintiff's nighttime anxiety.  AR 479.

On February 3, 2006, plaintiff was treated by Lozeau for a burn on his right hand. AR 477.  On April 24, 2006, plaintiff reported to Lozeau that he was doing quite well but wanted to have his morphine dosage increased.  Lozeau increased the dosage.  AR 473.  On June 16, 2006, plaintiff told Lozeau that the medication increase had been working very well for his pain and the Valium was working well for him at night.  However, he had been having significant anxiety symptoms because his mother had been trying to get him to go up north with her and he was "freaking out" just thinking about the trip.  On examination, Lozeau indicated plaintiff had no swelling.  AR 471.  At a visit with Lozeau on August 8, 2006, plaintiff told her he went on the trip up north with his mother and did okay.  He indicated that he was happy with the current medications.  AR 469-70.

On October 3, 2006, Dr. Lozeau referred plaintiff to Jeffrey Patterson, D.O., for intermittent, upper back pain.  AR 466.  At a visit to Patterson on November 8, 2006, plaintiff reported that his post-traumatic stress disorder was getting worse.  He said that while driving with friends recently, he had had to pull over to vomit after seeing a car burning.  Plaintiff said his pain medication did not last long enough and that he was not sleeping.  Patterson noted that plaintiff cried in the office and that, by his report, appeared

10

to be having acute anxiety reactions along with the post-traumatic stress syndrome. Patterson increased plaintiff's Zoloft. AR 463.

On March 19, 2007, Dr. Lozeau completed a treating medical source statement concerning plaintiff's ability to do physical work-related activities. She concluded that plaintiff could lift less than 10 pounds frequently and 10 pounds occasionally and could sit, stand or walk for less than two hours in an eight-hour work day. She also indicated plaintiff needed to change positions every 20 minutes. Lozeau noted that plaintiff had chronic pain in his neck, upper back and left side, including his extremities, as a result of burn injuries that limited his ability to reach, feel, push and pull. In Lozeau's opinion, plaintiff should avoid even moderate exposure to extreme cold and heat and all exposure to hazards, fumes, dusts, odors and gases. She estimated that he would be absent more than three times a month. AR 505-07.

5. Dr. Spear

On February 17, 2005, state agency consulting psychologist Jack Spear completed a Psychiatric Review Technique Form for plaintiff for the period March 3, 2004 to February 15, 2005. He evaluated the evidence under the listing categories for depression, anxiety and substance addiction disorder. In addressing the "B" criteria for these listings, he found that plaintiff had mild restrictions of activities of daily living and in maintaining social

functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  Spear concluded that the evidence did not establish the presence of the "C" criteria.  He did not complete a mental residual functional capacity assessment for plaintiff.  AR 428-40.

6. State agency consulting physician

On February 19, 2005, a state agency physician completed a physical residual functional capacity assessment for plaintiff, listing his diagnoses as chronic pain and hepatitis C.  He concluded that plaintiff could lift 20 pounds occasionally and ten pounds frequently and could sit, stand or walk six hours in an eight-hour work day.  AR 441-48.

C. Hearing Testimony

Plaintiff testified that he had lived with his mother for 25 years except for the period of his incarceration in 2000.  AR 511.  He testified that he had worked as a painter but that he had not worked since the 1986 motor vehicle accident in which he suffered third degree burns over 60 percent of his body.  AR 513-14.  Later in the hearing, however, after the administrative law judge asked him about his 2002 earnings record, plaintiff remembered that he had worked for Humble Painting in 2002, cleaning up the shop.  He testified that

this job did not involve any lifting or climbing ladders.  He got things ready for jobs, cleaned the brushes and folded drop cloths.  AR 531-33.

Plaintiff testified that he continues to have pain from his burns on the whole left side of his body and takes MS-Contin (morphine) for the pain.  AR 515-16.  He also has untreated hepatitis C, which causes pain and swelling in his liver.  AR 517-18. He testified that the morphine made him drowsy, upset his stomach and affected his memory.  AR 516. He testified that his hands shake as a side-effect of Zoloft, a medication that he takes for anxiety.  AR 521.

Plaintiff testified that he could stand for half an hour and had difficulty lifting.  AR 524.  He testified that he has nightmares nightly, that he isolates himself at home and that he has panic attacks in vehicles.  AR 526, 528-29.  He rests for two to three hours during the day.  AR 519.  Plaintiff testified that he did not drink and had not used street drugs in years. AR 531.

The administrative law judge called Dr. Donald Feinsilver, a psychiatrist, as a neutral medical expert.  AR 533.  Feinsilver testified that plaintiff had a substance abuse disorder and added that "It's hard to know where other psychiatric problems would stand if abstinent," AR 535, noting that plaintiff had not received any psychiatric treatment since 2004 at the latest.  AR 539.  Nonetheless, Feinsilver testified that if plaintiff was abstinent, he would have no impairment in the activities of daily living, mild to moderate impairment

13

in social functioning and mild-plus impairment in maintaining concentration, persistence or pace.  In determining that plaintiff had a mild plus difficulty in maintaining concentration, persistence or pace, Feinsilver considered plaintiff's pain and the effects of his MS-Contin medication.  AR 537.  Answering a question from plaintiff's attorney, Feinsilver testified that, if plaintiff had been abstinent, his symptoms would be related to post-traumatic stress disorder, anxiety and personality disorder.  AR 543.

The administrative law judge called Jackie Wenkman to testify as a neutral vocational expert.  AR 544.  She testified that plaintiff's past work as a painter would be heavy and semi-skilled and his work at the Humble paint company would be light and unskilled.  She testified that the physical demands of the maintenance job as described by plaintiff would be commensurate with the way those jobs are done for most employers in accordance with the way those jobs are done for most employers in accordance with the descriptions in The Dictionary of Occupational Titles.  AR 545-46.

The administrative law judge asked Wenkman to assume an individual of plaintiff's age, education and work experience who was limited to light or sedentary work that was simple and repetitive in nature and would involve very little, if any, contact with the public and minimal contact or communication with coworkers and supervisors to accomplish the work, although the work could be done in close proximity to other people.  She testified that such an individual could perform light and sedentary unskilled jobs as assembler (5,900

sedentary and 26,000 light jobs in Wisconsin), packager (143 sedentary and 7,400 light jobs in Wisconsin;) and inspector (1,134 sedentary and 7,700 light jobs in Wisconsin).  AR 456. Wenkman testified that an individual who slept two to three hours during the day could not maintain employment.  She also testified that no competitive work existed for an individual with the restrictions endorsed by Dr. Lozeau in March 2007.  AR 547.

### D.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 416.920.  Under this test, the administrative law judge sequentially considers 1) whether the claimant is currently employed, 2) whether the claimant has a severe impairment, 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1, 4) whether the claimant can perform his past work, and 5) whether the claimant is capable of performing work in the national economy.  Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).  If a claimant satisfies steps one through three, he is automatically found to be disabled.  If the claimant meets steps one and two, but not three, then he must satisfy step four.  Id.  The claimant bears the burden of proof in steps one through four.  If the claimant satisfies step four, the burden shifts to the Commissioner to prove that the claimant is capable of performing work in the national economy.  Id.

At step one, the administrative law judge found that plaintiff had engaged in substantial gainful activity after January 1, 2001, his alleged onset date.  The administrative law judge noted that plaintiff's earning record showed earnings of more than $10,000 in 2002, that medical records from October 2003 indicated that plaintiff was beginning a full time job supervising a paint crew and that plaintiff had admitted at the hearing that he had worked as a maintenance person at a painting company after his alleged onset date. Nonetheless, the administrative law judge proceeded to consider the remaining steps in the analysis to determine whether plaintiff was disabled at any time after his alleged onset date. At step two, the administrative law judge found that plaintiff had the severe impairments of a history of burns to the hands, feet and left side of the neck causing chronic pain and swelling; an anxiety disorder; and substance abuse.  AR 28.  He found that plaintiff's hepatitis C was not a severe impairment because it did not cause him work-related limitations for a 12-month period.  AR 29.

At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 28.  Evaluating the four functional areas relevant to determining the severity of mental impairments, see 20 C.F.R. § 416.920a, the administrative law judge found that plaintiff's mental impairment caused him mild-to-moderate restriction in his social functioning, no limitations in his activities of daily living

16

and a mild-plus limitation in his ability to maintain concentration, persistence or pace.  He further found that plaintiff had not had any episodes of decompensation of extended duration.  AR 29-30.

Next, the administrative law judge determined that plaintiff retained the residual functional capacity to perform simple, repetitive work at the light and sedentary exertional levels that required only minimal contact with the public, supervisors and coworkers.  AR 30.  In making the residual functional capacity determination, the administrative law judge found that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  AR 31.  He gave little weight to Dr. Lozeau's opinion regarding plaintiff's limitations, finding that it was unsupported by clinical findings and contradicted by her treatment notes, which showed that plaintiff's pain was under good control with morphine.  AR 34.  He assigned substantial weight to the opinions of Dr. Feinsilver and Dr. Ingison and the state agency medical consultants, finding those opinions to be consistent with substantial evidence in the record.  Id.

At step four, the administrative law judge found that plaintiff could perform his past relevant work as a maintenance worker as he actually performed it.  AR 34.  Alternatively, at step five, the administrative law judge found that plaintiff could perform a significant number of other jobs in the economy, namely assembler (5,900 sedentary and 26,000 light jobs in Wisconsin), packager (143 sedentary and 7,400 light jobs in Wisconsin;) and

17

inspector (1,134 sedentary and 7,700 light jobs in Wisconsin).  In reaching this conclusion, the administrative law judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles.  He concluded that plaintiff was not disabled since the date he filed his application for supplemental security income.  AR 36.

OPINION

A.   Residual Functional Capacity

Plaintiff does not challenge the administrative law judge's finding at steps one through three.  As in most social security cases, the primary focus of his attack is the administrative law judge's residual functional capacity assessment, which was the predicate to his findings at steps four and five.   This court must uphold the administrative law judge's residual functional capacity assessment if it is supported by substantial evidence, 42 U.S.C. § 405(g), that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).   When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).   Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision

18

falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

Nevertheless, the court must conduct a "critical review of the evidence" before affirming the

commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or

"is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936,

940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a

logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245

F.3d 881, 887 (7th Cir. 2001).

Plaintiff's attack on the residual functional capacity assessment can be broken down

into five subparts:  1) the administrative law judge "played doctor" in rejecting Dr. Lozeau's

opinion in favor of a finding that plaintiff is capable of meeting the physical demands of light

and sedentary work; 2) the administrative law judge failed to account for limitations posed

by plaintiff's hepatitis; 3) the administrative law judge afforded too much weight to Dr.

Feinsilver's opinion; 4) the administrative law judge did not adequately explain his residual

functional capacity assessment; and 5) the administrative law judge made an erroneous

credibility determination.  (Plaintiff also asserts that the administrative law judge failed to

consider his impairments in combination in determining his residual functional capacity.

Plaintiff merely cites a number of cases and then asserts that the administrative law judge

failed to consider the combination of plaintiff's severe and non-severe physical impairments,

without specifying what those impairments are.  See Mem. in Supp., dkt. #9, at 18.  I

decline to consider this argument because plaintiff has not developed it adequately.  <u>White Eagle Cooperative Ass'n v. Conner</u>, 553 F.3d 467, 476 n. 6 (7th Cir. 2009) ("[I]t is not the province of the courts to complete litigants' thoughts for them"). )

### 1. <u>Dr. Lozeau's opinion</u>

Plaintiff contends that the administrative law judge should have given controlling weight to the opinion of Dr. Lozeau, who had treated plaintiff regularly since 2004.  Under the commissioner's regulations, a treating physician's opinion is entitled to controlling weight, but only if the opinion is supported by medical findings and consistent with substantial evidence in the record.  <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 377 (7th Cir. 2006); 20 C.F.R. § 416.927(d)(2).  The administrative law judge found that Lozeau's opinion was neither.  He noted that there were no clinical findings in Lozeau's treatment notes to support the extreme physical limitations she had endorsed on the March 2007 medical assessment form and that, in fact, her notes showed time and again that plaintiff's burn-related pain was under good control with morphine.  In addition, noted the administrative law judge, Lozeau's estimate of plaintiff's limitations was contradicted by plaintiff's significant work activity in 2002.

These were good reasons to reject Lozeau's opinion in favor of that of the consulting state agency physician, who determined that plaintiff retained the ability to perform work

at the light exertional level.  Although it is true that in <u>Bauer v. Astrue</u>, 532 F.3d 606, 609 (7th Cir. 2008), the court of appeals found that "hopeful remarks" in clinic notes to the effect that a patient is "doing well" or had "increased energy" were not necessarily inconsistent with a doctor's opinion that the person is disabled, I do not read that opinion as establishing that an administrative law judge may never consider such remarks in determining the weight to be afforded the doctor's opinion.  Unlike <u>Bauer</u>, which involved a plaintiff with the difficult-to-control impairment of bipolar disorder, the condition for which Lozeau treated plaintiff was pain.  Beyond mere "hopeful remarks," Lozeau's clinic notes reflect consistently that the morphine provided good pain control, although the dosage had to be increased periodically (presumably because plaintiff developed a tolerance to it). Further, contrary to plaintiff's suggestion, plaintiff never complained of adverse side effects or requested a different medication.  I am satisfied that the administrative law judge properly considered Lozeau's remarks in her treatment notes about the efficacy of the morphine and reasonably concluded from those remarks that she had overstated plaintiff's physical limitations.

Further, as the administrative law judge noted, Lozeau never cited any clinical findings, such as the results of grip tests, abnormal neurological findings or range of motion testing, to support the various physical limitations that she endorsed.  In addition, Lozeau's opinion that plaintiff could not work is contradicted by plaintiff's having engaged in

substantial work activity at the light exertional level in 2002.  Although Lozeau did not begin seeing plaintiff until 2004, there is no evidence that plaintiff's burn-related pain was greater then than it had been in 2002.

In sum, I find that the administrative law judge properly weighed the medical evidence and did not err in rejecting Lozeau's opinion.

2. <u>Hepatitis</u>

Plaintiff contends that the administrative law judge erred in finding that plaintiff's hepatitis was not a severe impairment because it did not cause any work-related limitations for a 12-month period.  Plaintiff points out that plaintiff reported to Dr. Nakada in June 2004 significant right upper quadrant pain, myalgias, arthralgias and poor sleep.  Even if plaintiff is correct and the administrative law judge erred in concluding that plaintiff's hepatitis C did not cause more than minimal limitations on plaintiff's ability to work, plaintiff has not identified any limitations from that impairment that were not accounted for in the residual functional capacity assessment.  Plaintiff's primary symptom from the hepatitis was pain, which was controlled by the morphine.  His other primary complaint was fatigue, but as discussed below, the administrative law judge properly determined that plaintiff was not a credible witness with respect to his subjective complaints.  Accordingly,

22

any error by the administrative law judge in finding that plaintiff's hepatitis was a non-severe impairment was harmless.

### 3. Dr. Feinsilver

The administrative law judge assigned significant weight to the opinions of Dr. Feinsilver and Dr. Ingison, who both offered assessments of plaintiff's limitations resulting from his mental impairments.  Plaintiff argues that Feinsilver's opinion should have been afforded little weight because his review of the record was deficient.  Specifically, plaintiff asserts that Feinsilver's conclusion that the medical records failed to document whether plaintiff's substance addiction disorder was in remission was contradicted by Lozeau's and Nakada's treatment notes, which corroborated plaintiff's testimony that he had abstained from drugs and alcohol for three years before the hearing.  It appears, however, that what Feinsilver was seeking was a finding of abstinence by a mental health professional, something neither Lozeau nor Nakada was.  In any case, even if Feinsilver might have taken an overly rigid approach to the record, it is unclear what affect this error had on the outcome of plaintiff's application.  Feinsilver testified that his ratings of plaintiff's degree of impairment with respect to the four relevant areas of functioning were made without taking into account the effects of any substance abuse.  AR 537.  Accordingly, the administrative law judge did not err in giving this aspect of Feinsilver's opinion significant weight.

23

Plaintiff also argues that Feinsilver's conclusion that plaintiff had only a mild-plus limitation in the area of concentration, persistence and pace was entitled to only limited weight because Feinsilver did not consider plaintiff's pain and side effects of his medication, which would suggest greater limitations in this area.  However, the record does not support this argument.  Feinsilver testified as follows:

> He does report that he's on MS-Contin and that he has pain, both of which
> are negative factors in terms of impact on capacity for being attentive.  Trying
> to give some sort of conglomerate rating here, I'd offer a rating of mild plus.

AR 537.  This testimony indicates that Feinsilver took into account plaintiff's pain and side effects of his medication in determining that he had a mild plus difficulty in maintaining concentration, persistence or pace.

4. Adequacy of Residual Functional Capacity Assessment

Plaintiff contends that this case must be remanded because the administrative law judge did not explain adequately how he accounted for all of plaintiff's mental limitations in his residual functional capacity assessment.   As an initial matter, I note that the administrative law judge did not jump to the conclusion that plaintiff could perform "unskilled" work.  Rather, he described the work that plaintiff could perform as "simple, repetitive work" requiring "minimal contact with the public, supervisors and coworkers." Contrary to plaintiff's contention, that the *vocational expert* concluded that a person with such

24

limitations could perform some types of unskilled work is not improper; in fact, drawing conclusions about the skill level of work that can be performed by a person with certain mental limitations is precisely what vocational experts are trained to do.  Thus, I focus on the adequacy of the residual functional capacity as phrased by the administrative law judge, not as translated by the vocational expert.

Plaintiff argues that the requirement that plaintiff be limited to "simple, repetitive" work is meaningless.  In support of this argument, plaintiff relies on the court of appeals' decisions in Craft v. Astrue, 539 F.3d 668, 677-78 (7th Cir. 2008), and Stewart v. Astrue, 561 F.3d 679, 685 (7th Cir. 2009), in which the court was critical of residual functional capacity assessments that purported to account for the plaintiff's mental limitations by restricting her to "simple, unskilled" or "simple, routine" tasks.  But see Jaskowiak v. Astrue, 2009 WL 2424213, *18 (W.D. Wis. Aug. 6, 2009) (rejecting notion that limitation to "unskilled" or "simple" work can never be sufficient to reflect person's mental limitations, provided administrative law judge considers mental abilities required of unskilled work and explains basis for finding that plaintiff has such abilities).  The commissioner argues that Craft and Stewart are distinguishable because the claimants in those cases had mental limitations that were rated as "moderate," whereas plaintiff's concentration limitations were rated only as "mild plus."  The commissioner points out that a claimant whose mental limitations are rated as "mild" is deemed to have no severe mental impairment at all.  20

25

C.F.R. § 416.920a(d). Whether "mild plus" or "moderate," however, the fact is that plaintiff was found to have limitations in concentration, persistence and pace that were more than mild. Further, in assessing a claimant's residual functional capacity, an administrative law judge must consider *all* of a claimant's limitations, even those from impairments that are not severe. 20 C.F.R. § 416.945(a)(2). Although the commissioner's argument is not without merit, I am persuaded that the administrative law judge was required to account in his residual functional capacity assessment for plaintiff's limitations in concentration.

I turn to the question whether the administrative law judge's residual functional capacity assessment adequately accounted for these limitations. I answer this question in the negative, not because of any inherent impropriety in the use of the works "simple" or "repetitive," but rather because the administrative law judge did not build an adequate bridge between the evidence and the conclusion that plaintiff could perform such work. In particular, although the administrative law judge gave significant weight to Dr. Ingison's opinion concerning plaintiff's work abilities, he never explained how he arrived at the conclusion that a person with such abilities could perform simple, repetitive work requiring only minimal contact with the public, supervisors and coworkers. Presumably, he accounted for plaintiff's social anxiety by limiting his contact with others, which would also help to reduce the stress that plaintiff would experience on the job. It is also reasonable to infer that in limiting plaintiff to simple, repetitive work, the administrative law judge was

26

accommodating plaintiff's difficulties with concentration and attention.  However, Ingison also said that plaintiff's "difficulties would be probably high" in the areas of stress, change and pacing, and it is unclear whether or how the administrative law judge accounted for these limitations.  High degrees of concentration may not be required to perform simple, repetitive work, but the same cannot be said for persistence and pace.  Notably, the administrative law judge did not include any limitations on jobs requiring a fast pace or high production quotas, or any limitations that addressed Ingison's opinion that plaintiff would have problems with changes in work routines.  Cf. Stewart, 561 F.3d at 685 (suggesting that hypothetical should have included restrictions on ability to respond to work pressures); Schmidt v. Astrue, 496 F.3d 833, 844 (7th Cir. 2007) (limiting plaintiff to jobs not involving high production goals sufficient to account for consulting examiner's statement that claimant "may have difficulty tolerating the stress and pressure of full time, competitive employment"); Hofslien v. Barnhart, 2006 WL 470178, *3, 172 Fed. Appx. 116 (7th Cir. March 1, 2006) (hypothetical adequately captured plaintiff's moderate restrictions in maintaining concentration, persistence and pace by limiting production pressures and prohibiting assembly line work) (nonprecedential disposition); Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004) ("Many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time").  It is worth

27

noting that all of the jobs identified by the vocational expert in response to the administrative law judge's hypothetical—assembly, packaging and inspecting—appear to require a fast pace, high production quotas or both.

It is possible that the administrative law judge interpreted Ingison's remarks to mean not that plaintiff would be unable to perform such jobs, but merely that he would have difficulty doing so. However, it is impossible to discern that from his decision. Without a better explanation from the administrative law judge as to how he distilled Dr. Ingison's opinions regarding plaintiff's work abilities to the conclusion that plaintiff was capable of simple, repetitive work requiring only minimal contact with others, this court cannot determine whether his decision is supported by substantial evidence. Accordingly, this case must be remanded for further proceedings.

I will address plaintiff's remaining arguments to guide the parties on remand.

5. <u>Credibility</u>

Plaintiff challenges the administrative law judge's determination that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility. <u>Shramek v. Apfel</u>, 226 F.3d 809, 812 (7th Cir. 2000).

In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  <u>Prochaska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006); <u>Sims v. Barnhart</u>, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  <u>Shramek</u>, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  <u>Skarbeck v. Barnhart</u>, 390 F. 3d 500, 505 (7th Cir. 2004).

In his decision, the administrative law judge summarized plaintiff's hearing testimony. He noted that plaintiff had testified that he had constant pain and swelling from his burns for which he takes MS-Contin and that the medication makes him feel sleepy and nauseous and affects his memory.  AR 30.  In determining that plaintiff's testimony was not entirely credible, the administrative law judge considered the following:

- plaintiff's failure to seek any narcotic pain medication for the pain from his 1986 burn injuries until 2004, even though he alleged he was disabled from the pain since 2001;

- plaintiff's "very poor work history," which showed that plaintiff worked only sporadically before his alleged disability onset date with only a few years of earnings at a substantial gainful activity level;

- plaintiff's contradictory hearing testimony about his work in 2002; and

29

•    plaintiff's inconsistent statements in the record concerning his substance abuse.

AR 33.  The administrative law judge also noted that plaintiff's activities, including working as a maintenance person, taking a trip up north with his mother and carrying on a long-term dating relationship, implied that he could work some type of job for a full workday.  AR 33.

Plaintiff attempts to explain away all of these inconsistencies, but his attempts are unsuccessful.  Even if it is true that plaintiff self-medicated with heroin until 2004, it does not explain his contradictory statements at the hearing about his work history and others he made to health providers about his substance abuse (for example, he told Ingison in March 2003 that he had not used heroin for "years," but in January 2004, he told Nakada that he had used heroin intravenously as late as January 2003) and it does not explain his poor work history.  These inconsistencies, combined with plaintiff's drug-seeking behavior and his history of drug addiction, were good reasons for the administrative law judge to view plaintiff's statements with skepticism.  Further, with respect to plaintiff's activities, the administrative law judge reasonably inferred that plaintiff's ability to work at the substantial gainful level in 2002 tended to contradict his claims of total disability.  And although plaintiff's trip with his mother and his long term dating relationship do not necessarily show that he can work a full day or contradict his testimony that he avoids social situations, they do suggest that he can get along with others at least on a minimal basis.

30

In sum, plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding. The administrative law judge was not patently wrong. He built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements concerning his limitations were not persuasive.

### B.  Step Four—Ability to Perform Past Relevant Work

Plaintiff argues that the administrative law judge incorrectly determined that plaintiff could perform his past work at the paint shop, a job the vocational expert classified as "light maintenance." According to plaintiff, the administrative law judge did not obtain enough information about the demands of plaintiff's job at the paint shop to allow him to determine whether plaintiff still had the ability to perform it. Social Security Ruling 82-62 (administrative law judge must obtain sufficient information about skill level, exertional demands and nonexertional demands of claimant's past work to permit decision as to whether claimant can return to that work). He argues further that although a finding of ability to perform past relevant work can be made on the basis of the job as generally required by employers in the national economy, no "light maintenance" job exists in the Dictionary of Occupational Titles. Although the commissioner makes a half-hearted attempt to defend the administrative law judge's decision against these attacks, his arguments are not

31

persuasive.   In any case, it is unnecessary to consider this question because the administrative law judge went on to find that even if he could not return to his past relevant work, plaintiff could make a vocational adjustment to a significant number of jobs that exist in the regional economy.   Accordingly, I focus on plaintiff's challenge to the adequacy of the administrative law judge's decision at step five.

## C.  Step Five

Social Security Ruling 00-4p explains that in meeting his burden at step five, the commissioner can rely on information contained in the Dictionary of Occupational Titles. The Dictionary, published by the Department of Labor, gives detailed physical requirements for a variety of jobs.  The Social Security Administration has taken "administrative notice" of the Dictionary.  20 C.F.R. § 404.1566(d)(1).  Alternatively, the commissioner may rely on information provided by a vocational expert.  SSR 00-4p.  However, an administrative law judge who takes testimony from a vocational expert about the requirements of a particular job must determine whether that testimony is consistent with the Dictionary. Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006).  The ruling states:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

32

Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p.

In this case, although the administrative law judge asked the expert whether her testimony about the requirements of plaintiff's past relevant work was consistent with the Dictionary, he failed to ask the same question with respect to the additional jobs that the expert identified in response to his hypothetical step five questions. Nonetheless, "the [failure to make the SSR 00-4p inquiry] is harmless unless there actually was a conflict." Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (citing Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007)). Here, although plaintiff asserts that "there are a myriad of different assembler, packaging and inspector jobs in the DOT, many of which would conflict with the ALJ's own [residual functional capacity]," Br. in Supp., dkt. #9, at 27, he does not cite a single number from the Dictionary in support of this assertion. Doing so in the reply brief is too late. United States v. Alhalabi, 443 F.3d 605, 611 (7th Cir. 2006) (arguments not fully developed until reply brief are waived).

Moreover, to the extent that there was a conflict, SSR 00-4p requires the administrative law judge to obtain an explanation only when the conflict between the Dictionary and the vocational expert's testimony is "apparent." Terry, 580 F.3d at 478;

33

<u>Overman v. Astrue</u>, 546 F.3d 456, 463 (7th Cir. 2008).  When, as here, the plaintiff failed to identify any conflict at the hearing, he must show that the conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance."  <u>Overman</u>, 546 F.3d at 463.  Plaintiff has failed to make this showing.  Accordingly, any error that the administrative law judge made at step five was harmless.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment in favor of plaintiff and close this case.

Entered this 21st day of October, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

34